This is the time for argument in Black v. Brewer, and I understand Mr. Hasselbeck, you are in Saipan? Yes, Your Honor. I'm here in the clerk's office in the District Court of the Northern Mariana Islands. All right. Well, convey our good regards to those good folks, and you are prepared to present argument. And for the appellees, we have both Ms. Kleber and Attorney General Baca are present, and they both intend to present argument. All right. So each side has a total of 15 minutes. You will have to help us keep track of your time, and the appellant may proceed. Thank you, Your Honor. First, I want to make sure that everyone can hear and see me just fine. We can hear you. Thank you, Your Honor. May it please the Court, my name is George Hasselbeck, and I'm here representing the interests of the plaintiff appellee in this matter, excuse me, appellant in this matter, and I would like to reserve five minutes of my time for rebuttal at the end of my argument, if that's possible. That's fine. Thank you, Your Honor. The plaintiff brings this appeal citing two main issues. The first, that the grant of summary judgment by the District Court was an error, and the second, that the cumulative errors at trial deprived the appellant of a fair trial. As to the first point, the plaintiff filed a lawsuit that included multiple causes of action, the two main causes of action being a suit under 28 U.S.C. 1983 alleging retaliation for an exercise of First Amendment rights, and the other main cause of action was a state claim for a tortuous discharge in violation of public policy. The defendants filed a motion for summary judgment, and the Court granted summary judgment as to those two specific causes of action. Now, the District Court granted summary judgment, but the District Court only considered the language of the complaint when it granted summary judgment. Doesn't the complaint sort of identify the issues that are in contention? Yes, Your Honor, it does. However, in this Court's holding in a very similar case, Magana v. CNMI, a 1997 Ninth Circuit decision, this Court held that courts deciding for motions for summary judgment must consider more than just the pleadings. I grant you that. I don't quarrel with that notion. That's a proper – I fully agree with that. But when you look at all the evidence that's been submitted in opposition to summary judgment or in support of summary judgment, it usually relates to what's alleged in the complaint. But when you look at the complaint, you know, I don't see the word association. I see First Amendment, free speech. Yes, Your Honor. The word association does not appear in the complaint. However, the complaint does allege an actual and or perceived violation of First Amendment rights. The reason we have discovery is to flesh out the issues for trial. Now, during discovery, it became apparent that there was evidence pointing to retaliation for an exercise of First Amendment rights of free association. Now, had this motion for summary judgment been a motion for judgment on the pleadings or a 12 v. 6 motion to dismiss, it would have been proper for the Court only to consider the language of the complaint. However, that's not the – that wasn't the – that wasn't the motion that was brought. The motion that was brought was a motion for summary judgment. Maybe my question is not complete or accurate. Is it fair to say that the way in which you alleged the complaint, that it raised a free association claim? Your Honor, I believe the way we alleged the complaint does not forestall a free association – a free association claim. Well, you just changed my question. You just – you just changed my question. My question is, can you read the complaint fairly to raise a free association claim based on free speech? Well, Your Honor, even if you – I don't believe – even if you cannot read into the complaint a free association claim, after the close of – after the close of discovery, the defendants were on notice that there was a free association claim being raised. The district court had an opportunity to allow the plaintiffs to – How was that so? I'm sorry, Your Honor? How was everyone on notice that there was an association claim? Well, a few examples, Your Honor. In deposition testimony, the question was asked, as far as – as far as the petition, was there mediation involving that letter of concern or meeting? Yes. Did you ever participate in any of those meetings? Yes. And there was also another answer given. I became involved with a group of teachers that were both involved with the letter and those that were not involved with the letter that had concerns with the administration and their performance at the school. And what did that group do? That group conducted a mediation. And, Your Honor, there was also – Well, the judge was supposed to know from that deposition that you were making a – an association claim? Your Honor, in our opposition to the motion for summary judgment, we argued in the alternative that even if the free association claim was not raised in the complaint, that the plaintiff be given an opportunity to amend the complaint. The court dismissed the two major causes of action, citing to one – citing simply to judicial estoppel. Well, I'm sorry. I don't have all of the materials here before me. Did you cite to that deposition testimony in your deposition? Yes, Your Honor. Pardon me, Your Honor. Yes, we did. We cited to both that deposition testimony and the testimony that was provided by affidavit in opposition to summary judgment. Now, the district court – I must emphasize that the district court stopped when it said the words judicial estoppel. It said that the plaintiff is judicially estopped from raising any other claims. Now, the term judicial estoppel speaks of a doctrine that requires a party to take a legal position to prevail on it and then at a subsequent proceeding take another contrary legal position. Now, that's not what happened here. The plaintiff didn't prevail on any legal position that it took. At worst, there is an inartfully worded complaint that was demonstrated to be inartfully worded throughout the process of discovery. Once these things were raised on discovery, the court should have allowed the plaintiff – if the complaint was so defective – should have allowed the plaintiff the opportunity to amend the complaint. Why didn't you just file a motion to amend it? Well, Your Honor, we did file a motion to amend. We argued in the alternative that we should be allowed to amend. This was not raised – again, this was not raised before discovery on a motion on the pleadings or a motion under 12b-6 for dismissal. These issues were not raised until after the close of discovery when summary judgment was requested by the defendants. So there wasn't an opportunity – we did not realize that the complaint needed to be amended until after discovery was closed. So you did ask for – when was the first time you asked for the opportunity to amend? We asked for the opportunity to amend in the alternative in the opposition to the motion for summary judgment. Let me ask you a question, Counselor. Yes, Your Honor. It seems to me that this is an employment agreement. It's a one-year agreement. She was allowed to serve to the end of the contract. I don't see that she was terminated. Where do I find anything in this – any evidence in this proceeding that the plaintiff was terminated? Well, Your Honor, the defendants argued that she was not fired for the purposes of the state claim for wrongful termination. And in support of that, the defendants cite three cases that talk about violations of the 14th Amendment right to due process. Well, just before you get to the cases, show me the evidence in the record that this particular plaintiff was ever fired, was ever terminated, was ever anything. It seems to me that she served to the end of her written contract. Yes, Your Honor, there are – So then where is there, at that point, at the end of your contract, was there any contractual language that she should continue? No. Was there any other reason why she should continue? No. There's nothing in this record which would suggest she should continue at all. Yes, Your Honor, but the tort of wrongful discharge, under that tort, it encompasses more than simply just firing. The defendants did cite California law that says a fixed-term contract, at the expiration of a fixed-term contract, if someone is not renewed, that doesn't count as a termination. However, other states have taken a look at this particular tort, and other states have determined that you can equate non-renewal with a termination. Are you talking about a state law claim in common law, then? Because we're certainly not talking about a breach of contract here. That is correct, Your Honor. We're talking about the state law claim of tortious discharge in violation of public policy. Just a minute, Counselor. In those particular actions, if we have an employment at will claim, which is now we've got a state common law claim, those claims are ended when one puts together a written contract. We don't have an employment at will anymore. We have a contract which terminates the employment at will, and therefore we look to the contract, and there's nothing at the end of the contract that says she should go on. Well, Your Honor, under the tort of wrongful discharge in violation of public policy, that tort exists even outside the context of an at-will employment. Your Honor, I see that I'm approaching the end of my time. Would you like me to finish answering the question, Your Honor? Yes, I'd like you to finish answering that question. Yes, Your Honor, thank you. Again, we cited to two instances in other state law cases, one from Washington and one from New Hampshire, where a fixed-term contract employee was non-renewed at the end of their contract. Those two cases, the Guild case and the Short case, are cited in our briefs. And in both those instances, we have fixed-term contracted employees who were non-renewed, and the courts allowed a claim for tortious discharge in violation of public policy to continue. I'd submit to the court that it is up to the CNMI Supreme Court to determine whether or not this tort exists in the CNMI, and if it does, to what extent. But the district court never even got to this, never even got to that point, because it misapplied the doctrine of judicial estoppel. And, Your Honor, I see that I've run over on time. Does the panel have any more questions? Yes, I have one question. Yes, Your Honor. What is there in the evidence that would suggest that she was not renewed on account of her association with people who, as I understand it, did have their contracts renewed? Well, Your Honor, first of all, that was brought up during trial in a closing argument that, as evidence that nothing was done improper, is that there were still teachers employed, and there still are teachers employed, that were actively involved in this group. And, Your Honor, I'd submit to the court that, as a factual matter, it doesn't make sense to fire all of them. And that's not what you see in these situations. You see one individual who is outspoken that is used as an example, and terminated or non-renewed because that's an example. I was asking what evidence is there that that was the cause of her not being terminated, because there was some other evidence that would provide some cause for not being terminated that had nothing to do with her association. Yes, Your Honor, and under the context of a summary judgment motion, the court is supposed to view the evidence in the light most favorable to the non-moving. I cited to a case in our briefs, a Ninth Circuit case, Kaiser v. Sacramento City Unified School District, that recognizes in these type of wrongful termination claims, you are very rarely going to find the smoking gun. You're not going to find a memo that says, we are firing so-and-so. Well, yes, but as I understand it, discovery had closed. Yes, Your Honor. So I'm just asking you, what evidence is there that that was the cause, so that there would be a good reason to permit the complaint to be amended? Yes, Your Honor. In the Kaiser case, this court outlined a few ways that circumstantial evidence can create... I'm going to ask, what is the circumstantial evidence here? Well, the first, Your Honor, is the proximity. It's the evidence that prior to the letter of concern, the circulation, and the signing of the letter of concern, Ms. Black had positive reviews, but these reviews only became negative after the letter of concern was initiated. So this is circumstantial evidence? Yes, Your Honor, but the Kaiser case does allow that to support. I understand. Yes, Your Honor. All right, thank you. You may reserve the rest. Thank you very much, Your Honor. May it please the Court, Karen Klaver on behalf of the CNMI Public School System, and at my counsel table is Assistant Attorney General Gregory Baca, who represented former Principal Jim Brewer in this case. This case presents a claim of an employee who, Your Honors are correct, finished her one-year term employment contract. And when it wasn't renewed, she tried to manufacture a claim to hide behind the cloak of First Amendment protection for a speech she claimed she did not make. There are three main points I'd like to bring up that focus on the judge's questioning here. First is that Black did complete her one-year employment contract. Secondly, she was simply not renewed. She was not terminated. And finally, there's no evidence that Black ever engaged in protected speech, which is the basis of her complaint. But the questions really go, my colleagues, the questions really go to when you put pleadings in front of the judge and when you have the standard as to how you're to interpret the pleadings, and they're to be interpreted as widely as they can. They're mainly notice pleadings at this point about particular issues. How can we say that the government was not on notice, especially if we give consideration to what counsel suggested about the discovery, that the government's not on notice, that there's more than a freedom of speech claim here. There's a freedom of association claim. And therefore, one has to determine whether the freedom of association is really something that's the basis for the non-termination or for the termination or for whatever it was, which is my question. Well, see, there was never notice. It was a freedom of association claim. In the complaint, it states, Mr. Brewer formulated the erroneous belief that Ms. Black was responsible for drafting, circulating, and or encouraging others to sign it. Throughout discovery in this case, it was found that Ms. Black had no part in writing or submitting the letter. She did not sign the letter. She was not responsible for drafting, circulating, or encouraging others to sign the letter. She stayed out of discussions regarding the letter. She didn't know who signed it and who didn't sign it. She didn't solicit comments or complaints regarding administrators. She didn't remember having any discussions with other teachers about complaints about the administrators. She didn't voice personal concerns over Principal Brewer at staff meetings. So at that point, what association did she have? Up until the motion for summary judgment where this court's case of Lawson was put in front of the appellant, she claimed the whole time she had nothing to do with this letter. Now, in Lawson, Your Honor, Judge Schroeder's decision in this case said, accepting the allegations as true, she has not engaged in any constitutionally protected activity. A free speech case depends on speech. And there was none in this case. And up until that case was cited, there was no allegation of free speech. The only allegation was that it was free association. And to piggyback on the free speech claim. Now, also going to her allegation that she was, this non-renewal is akin to termination, using the facts of Ms. Black's own employment history with the public school system completely refutes this argument. Ms. Black was, in fact, not renewed from the CMI public school system in 1998. She was then offered another employment contract. Her second employment contract, she was asked to resign in lieu of termination. But you know what? The public school system gave her another chance. She got another employment contract. And this time, under Mr. Brewer at Hopla Junior High School. It was a one-year employment contract. She finished out that one year, and he had the option of not renewing her, which he did. I guess my question then is, is there a court? Well, there is. We're looking at a tort now of wrongful termination. I don't know how you name it over there. There we go. But the council argues there's this tort of wrongful termination that can be submitted, even if one is not again renewed. Is that so? No. Do you have any side tort in your section? Well, what I would like to point to is a case, which was Dyack. This was another Ninth Circuit case that took place in the commonwealth of the Northern Mariana Islands. And this was Mr. Dyack, who was a physician, who was actually terminated in the middle of his contract. And the Dyack court said public employees on limited-term employment contracts have no property interest in continued employment. And, you know, in this case, she finished out that one-year employment contract. And also, again, there's nothing in the record that shows there's no evidence, and it's hard to imagine any circumstantial evidence that showed that she was not renewed because of this letter of concern that she did not sign and, furthermore, claimed no responsibility for. She's trying to piggyback a free speech, free association claim on other people's potential free speech. There was 26 people who signed that letter of concern. We have no case that went in front of any of the courts alleging any wrongful termination, any wrongful employment actions against those people. Was there any evidence that she went to meetings? There was an evidence that she tried to participate in a meeting. However, that meeting was strictly for the 26 people who signed the letter of concern, and it was a mediation with former Commissioner Enos, who was trying to bring everyone together to air out their concerns and differences of what happened. That's the only evidence that she attended a meeting? She tried to attend. She did not attend it. How about other? Not that I have in front of me. Did she pal around with other people who were part of it? What we have from the deposition testimony was that she associated with people who signed it and with people who didn't sign it. She paled around, apparently, with everybody. But the evidence that was presented at trial for her, you know, the blacklisting claim, was that there were numerous teachers from Hopwood Junior High School, and it is in the briefs of how she was... What's the record on the school system not renewing one-year contracts? I don't have the exact statistics with me. But how it works with the school system is actually most employees who are not renewed, we have 20 public schools under the PSS and 10 Head Start centers. So sometimes when people do not get along with their employers, they move to one of the different 20 public schools, which happened in this case, which Ms. Black was able to do in the past. We do see a number of non-renewals at the school system. But most people are... Is it pretty common? Let me ask you this. Is there any evidence that it's fairly common that these contracts are renewed on pretty much a regular basis? For the most part, but there's all sorts of different criteria that some schools would have. For example, you have to meet some of the qualifications of no child left behind. Are you suggesting that it would be appropriate not to renew a contract because somebody engaged in... If you engaged in... Outright First Amendment activity, let's say. I would argue that that would not be okay to do. And as legal counsel for the public school system, if I heard or got wind that someone was doing that... You would say, don't do that. We would say, you do not do that. And it's not on record, but we have made principles, in fact, renew people. And it goes based on non-renewals or based on when you have poor performance records, when you don't get along with people, when you don't agree with the approach. And there's plenty of evidence on the record and in the briefs that Ms. Black simply was not essentially a team player and she was hostile, pushy, and aggressive toward fellow employees. Do you agree with the district court's judicial estoppel reasoning? I believe that they could have had perhaps used a better phrase than judicial estoppel. What would you use? I would just, because she's a sham affidavit. That's what I would have actually put in, a sham affidavit based, I believe... Meaning her affidavit was inconsistent with what she testified to at her deposition. Inconsistent and her complaint. And her complaint. Where throughout the complaint she just insisted I had nothing to do with this. I didn't associate with people. Based on the depositions, I didn't solicit comments. I didn't talk to people about my disagreements with the administration. Yet after the cases, I believe, that were presented in our briefs on summary judgment, it came clear what the Ninth Circus has decided in the past, that this is not a viable claim. And then it became the association. The hearing on the motion, was there an oral hearing on the summary judgment motion? It was on the papers. Do you recall? I believe it was an oral summary judgment. Did counsel for the plaintiff ask for leave to amend the complaint at that time? Your Honor, at that point, I was placed as a witness on this case, so I don't believe I attended these arguments. So I believe Mr. Dotz, who is in the room, would be able to answer that question. I guess my biggest problem with this whole case is this. I guess I'm wondering about your best argument. My biggest problem is that, number one, we have here pleading, which articulates the First Amendment right, which association could be somewhat a part of, that we have some in the discovery which would suggest that association has been discovered in that part of the claim. And then we come to summary judgment, and we're really looking at whether there is any kind of a percipient tort or contract which could in any way be alleged based on this. I have no problem with contract laws, contract law, and we have a contract, and that can undo what was, in fact, an employment appeal. And I'm real worried about the tort, because I haven't found any tort that would be different than that in the jurisdiction. So I guess I'm wanting you to comment about, I mean, we're on summary judgment. We should give the plaintiff the chance to go to court if giving every benefit of the doubt to the plaintiff. Well, you know, at this point, the plaintiff did get to go to court on some of the claims and lost those claims with the jury trial. Well, I appreciate that. We're not talking about those. We're talking about the ones he lost on summary judgment. You know, it's also, I think, fair to the defendants to be able to go through almost two years of discovery on this case and know exactly what we're arguing against. And you could see what was elicited from testimony during discovery was that she had nothing to do with this, and it was wrong. Let me ask this in a different way. In your motion for summary judgment, did you urge that the evidence, because discovery had closed, it seems to me that's important, that there was no genuine material issue of fact as to the actual cause of the failure to renew? I believe we would have argued that in our briefs. You don't remember what you argued, why her contract wasn't renewed? Her contract wasn't renewed. I believe there was some mention in it because she had received letters of reprimand and letters of concern. And I'd also like to point out that those letters of reprimand and performance evaluations were entitled as a due process in front of our Board of Education, and they upheld them, that those letters of reprimand were viable letters of reprimand. Were they from the vice principal that was the subject of the letter of concern?  They were from the principal. And the performance evaluation, I believe, might have been from the vice principal, but they were all behind all these reprimand. There was significant documentation and witnesses that testified as to, most of that has to do with pushy and aggressive and hostile behavior toward other employees and students. And I take it there was, so in your, Plaintiff's counsel has indicated that there was no direct evidence that she was to be made a sacrificial lamb? Oh, absolutely not, because all the evidence says she had nothing to do with this letter of concern. And what the school district did was try to mediate and address all the concerns of the employees. It's in the school district's best interest to have happy employees and happy teachers because you want students to learn. You know, the idea of, you know, firing someone as a sacrificial lamb when nobody knew that she was associated with this letter, it just makes no sense, and it just kind of lends credence to employee. You know, if this is, you know, if she's allowed to make these arguments, then any employee who feels that at any point they can have a reprimand or they're possibly going to be not renewed or terminated, they're going to make a claim that they, and in this case, it's not even I spoke up on it. It's that someone else spoke up on it, and I should be able to jump on that bandwagon. I just want to confirm one last thing. Maybe you already said this, but I want to just make sure of that. You didn't understand or didn't know or realize that clients were alleging an association claim until the opposition to your summary judgment motion. Absolutely, Your Honor, and the decision came out, it was like pretty much a few weeks before trial after about two years of discovery. And there were no letters sent to you saying? No letters, absolutely nothing. No meetings, settlement conferences where we're talking about? No settlement conferences. Or, you know, I don't know, whatever, hearings before the district court? The premise that we were, for building our defense on this case, was her free speech rights and that, you know, what she had said was she had, it essentially is the Watson case. Okay. That she had nothing to do with it. All right. I see my time's up. Thank you, Your Honor. Thank you. Shall we give the attorney a moment? Attorney General. Oh, I have a question. Attorney General. Do you have anything to add to that? No, Your Honors. I didn't have anything else to add except just the one point that if the court, if this is a dispositive matter as far as the existence of a tort in the CNMI or not, perhaps the court should certify the question to the CNMI Supreme Court. Oh, good. Another three years. All right. Thank you. All right. You may proceed. You have about two minutes. Thank you, Your Honor. It's a little hard to see. You're a bit far back from the camera. Yeah, I keep panning up. I can't tell if you're staring at me or not. It may be the glare off the top of my head. My apologies. Just a few quick points to make. There were several questions asked about the practice of renewals within the CNMI. There was evidence offered in discovery and in affidavits that the general practice among PSS school teachers is renewal, and that there are also in the CNMI we have a very limited number of schools. We have the public school system, which is the only public school system in the CNMI. I would submit to the court that a non-renewal in the CNMI and the additional action of which there was evidence in the record that Ms. Black was actively prohibited from seeking employment at another school, that she was in essence blacklisted. There is evidence in the record as to that. Also, in previous decisions by the district court, Your Honors, the CNMI, the unique circumstances in the CNMI have been recognized. In an EEOC case versus a SACO corporation cited in our briefs, the district court granted default judgments when annual employment contracts were not renewed based upon national origin. So there is precedent in the CNMI that non-renewal is tantamount to termination. Additionally, Your Honor, there was a great deal made by the defendants about poor performance and letters of reprimand. Well, Your Honors, that is a factual determination that should have been taken up by the jury, but there is also evidence, as I pointed out in my primary argument, that all of these bad things occurred after the letter of concern came out, after the association was there. The poor performance records, those records were, those evaluations were performed by the individual administrator that was the subject of the letter of concern. Did you put in your 56F statement that you wanted more discovery in response to the motion for summary judgment? I believe so, Your Honor. However, we certainly did put in the motion for the opposition to summary judgment a request to amend our complaint. I understand that. I didn't see any request for further discovery. Well, Your Honor, I don't believe the further discovery would have been necessary. We had deposed everyone that was appropriate. And finally, Your Honors, I'd just like to point out the CNMI and the public school system did not raise the sham affidavit issue on summary judgment. I don't believe it's properly brought before this court. And there is direct evidence that the reason Ms. Black was fired was because of her association. We have the testimony of Ms. Black, and we also have the testimony of another teacher. There was a record made that we wanted to have that teacher testify at trial about statements Mr. Brewer made. But that teacher was not allowed to testify at trial. And my time is drawing to a close, Your Honors. If the panel has any further questions, I'd be happy to entertain them. The case is closed. Are there any further questions? All right. Thank you. Thank you, Counsel. Thank you very much, Your Honor. The case just argued is submitted for decision and concludes the court's calendar for this morning. The court stands adjourned.
judges: Schroeder, Paez, Smith